## 30570. COURSIN v. HARPER.

*Note:* The following is a part of the case appearing at page 729, ante.

INGRAM, Justice, concurring.

This concurrence is written to point out one example of several very real situations encountered in everyday practice which I believe the dissent has overlooked in its professorial analysis of this case.

After spending several pages scolding and reproving the majority of this court for its decision, the dissent finally discloses its basic opinion in the assertion that: "When a judgment and collection on the judgment is sought, I see absolutely no reason why fairness should be thought to require a judicial officer to oversee the initiation of [garnishment] proceedings."

The correctness of the entire dissent can be measured by this statement because expressed in it is the substance of the conclusion reached by the whole of the dissenting opinion. If it is right, the majority opinion is wrong. If, however, it is regretfully indefensible and is porous, the result reached by the majority can more easily be considered as correct.

As I see it, the soft under-belly of the position so stoutly advocated by the dissent is best seen in the divorce practice. Let us consider the not uncommon occurrence of the situation involving a wife who has secured an alimony judgment providing for periodic (weekly or monthly) payments by her divorced husband. He gets behind in his payments and the divorced wife consults a lawyer about collecting the arrearage. After considering contempt proceedings, the wife and her lawyer finally decide that, since the former husband is locally employed, the garnishment route is the best collection course because it will cut off any wage money to him after summons of garnishment is served upon his employer. No daily or weekly earnings exemption will be available to the

husband because the garnishment is for alimony. The pressure on him to settle the former wife's claim will be enormous when his boss tells him he has no paycheck as all his earnings have been paid into court on his former wife's alimony claim.

What did the wife have to do to seize, without any notice to her former husband, the wages for his labor and secure them for herself? Did some judge review and approve as correct the amount of alimony arrearage claimed by the former wife before the husband's earnings were diverted from his paycheck? Absolutely not. All the wife had to do was to furnish an affidavit to the superior court clerk claiming some specific sum she thinks is past due under the periodic payment alimony judgment and request the clerk to issue an execution for it. No hearing before a judicial officer as to the correctness of the amount of the execution (previously called a fi. fa.) was required and so the clerk routinely issued the execution. It was then used as the basis for a post-judgment garnishment to seize the husband's wages until the wife's arrearage claim was satisfied in full and paid to her through the court.

No hearing before a judicial officer ever took place unless the husband hired a lawyer and attempted either to intervene in the garnishment proceedings or seek an injunction because the garnishment law gave him no hearing either before or after the seizure of his money. He might not owe a dime, but, nevertheless, his total wages were seized and paid into court on the strength of his former wife's ex parte affidavit garnishment proceedings. Is that really fair?

It was this sort of one-sided justice that prompted the U. S. Supreme Court to strike down our old garnishment statute. Current notions of due process require that we bring our practice in line with controlling decisions of the U. S. Supreme Court. For these reasons, and some others, I am convinced the majority opinion is correct, and I join it.